UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------X
LOCALS 40, 361 & 417 PENSION FUND and,  :
LOCAL 580 PENSION FUND                   :
                    PlaintiffS,          :
                               :  06 Civ. 5224(JFK)
   -against-                              :  **OPINION & ORDER**
                               :
JOAN R. McINERNEY and JUDITH L.          :
McINERNEY,                               :
                               :
                  Defendants.           :
-----------------------------------------X


**JOHN F. KEENAN, United States District Judge:**

      Plaintiffs Locals 40, 361 & 417 Pension Fund and Local 580 Pension Fund (collectively, the "Funds") brought an action in interpleader, pursuant to 28 U.S.C. § 1335, against defendants Joan R. McInerney ("Joan M.") and Judith L. McInerney ("Judith M.") to determine the proper beneficiary of pension benefits that have accrued to non-party decedent Joseph A. McInerney ("Decedent") under employee pension plans administered by the Funds and governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.  The Funds seek a discharge from interpleader and reimbursement of attorneys' fees and costs.  Defendant Judith M. has moved for summary judgment, seeking an order declaring that she is entitled to receive all of the Decedent's accrued pension benefits being held by the Funds

("Benefits") and directing the Funds to release the Benefits to
her.   For the reasons that follow, the Funds are discharged from
the action and awarded reasonable attorneys' fees and costs,
Judith M.'s motion for summary judgment is granted in full.

### Background

_____On July 10, 1965, Joan M. married Decedent. (Affidavit
of Judith L. McInerney in Support of Motion for Summary Judgment
("Aff."), ¶ 3).   During the marriage, Decedent accrued pension
benefits through his membership in the Funds. (Id. ¶ 4.)   On
April 22, 1999, Decedent and Joan M. entered into a separation
agreement ("Separation Agreement"). (Id. ¶ 5.)   The Separation
Agreement provided, inter alia, that the rights that Decedent had
acquired in the pension benefits administered by the Funds during
the term of the marriage would be divided between Joan M. and
Decedent pursuant to the equitable distribution formula set forth
in Majauskas v. Majauskas, 61 N.Y. 2d 481 (1984).[1] (Aff., Ex. A,
art. VII.)   The Separation Agreement also provided that Joan M.
could file a Qualified Domestic Relations Order ("QDRO"). (Id.)

_____

[1] Majauskas provided that "vested rights in spouses' employee
benefits plans are marital property to the extent that the
employee acquired plan benefits between the date of the marriage
and the commencement of the divorce action." McCoy v. Feinman, 99
N.Y.2d 295, 303 (2002) (citing Majuaskas, 61 N.Y. 2d at 485-86).
For purposes of the equitable distribution of Decedent's pension
benefits, the divorce action was deemed to have commenced on May
1, 1994. (Aff., Ex. A, art. VII.)   Thus, the Separation Agreement
provided for the distribution of all benefits acquired by
Decedent from July 10, 1965 through May 1, 1994.

A QDRO "is defined as an order 'made pursuant to a State domestic relations law' that 'creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a [pension] plan.'" Berlet v. Berlet, No. 98 Civ. 3263, 1999 U.S. Dist. LEXIS 923 (S.D.N.Y. Jan. 26, 1999) (quoting 29 U.S.C. § 1056(d)(3)(B))(alteration added)).  An "alternate payee" is "any spouse, child, or other dependent of a participant who is recognized by a [Domestic Relations Order] as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant." 29 U.S.C. § 1056(d)(3)(K).

Apart from the provisions granting equitable distribution of Decedent's rights in the Benefits that had vested during the term of the marriage and permitting Joan to file a QDRO, the Separation Agreement contained a broad waiver and release of each party's right to make any claim to the other's employee benefits.  Specifically, the Separation Agreement stated that "the parties mutually release and waive any right or interest which he or she may have in the pension, IRAs, or other retirement accounts of his or her spouse." (Id.)  The Separation Agreement also stated that "each party forever releases, waives, and relinquishes any and all rights or claims of any kind, character, or nature whatsoever, which he or she may hereafter

3

acquire to the estate, property, assets or to any other effects of the other under the present or future laws of this state or any other jurisdiction." (Id., Ex. A, art. III.)

        On August 24, 1999, a Judgment of Divorce ("Judgment") was obtained by Decedent and Joan M. in New York State Supreme Court. (Id. ¶ 9.)  The Judgment provided that the Separation Agreement survived and did not merge into the Judgment. (Id., Ex. B, at 2.)  The Judgment also reiterated that Joan M. had the right to file a QDRO. (Id.)  Joan M., however, did not file a QDRO. (Id. ¶ 14.)

        On October 23, 1999, Decedent and Judith M. were married in New York State. (Id. ¶ 11.)  On July 18, 2005, while still married to Judith M., Decedent died. (Id. ¶ 12 & Ex. C) At the time of his death, Decedent had accrued pension benefits that he had not received. (Id. ¶ 13.)  Decedent had expressly designated Judith M. as the beneficiary of any "pre-retirement, survivorship/death benefits" to be provided by the Funds. (Id. ¶ 14.)

        On September 19, 2005, Joan M. commenced an action against Decedent, Decedent's estate, and the Funds in New York State Supreme Court. (Id. ¶ 15.)  Joan M. sought, inter alia, the execution of a QDRO, nunc pro tunc, and an order restraining the Funds from releasing the Benefits. (Id. ¶¶ 15-16.)  On January 27, 2006, at a conference in New York State Supreme Court

4

(Garvey, J.), Joan M., through counsel, voluntarily dismissed the action, and Justice Garvey so-ordered the minutes of the conference. (Id. ¶ 17.)  On March 27, 2006, Judith M. sent a letter to an employee of plaintiff Local 580 Pension Fund, requesting that Decedent's benefits be released to her. (Interpleader Compl., Ex. E.)

The Funds commenced this action in interpleader seeking a determination of who is to receive the Decedent's pension benefits currently being held by the Funds.[2]  The Funds seek a judgment (1) enjoining the defendants from prosecuting any claims against the Funds relating to the disposition of the Benefits, (2) ordering the defendants to interplead their claims to the Benefits, (3) authorizing a person to receive the Benefits, (4) discharging the Funds from any liability to the defendants relating to any claims to the assets at issue, and (5) awarding the reimbursement of costs and attorneys' fees.

---

[2]On June 28, 2006, plaintiff Local 580 Pension Fund filed an interpleader complaint in the Southern District, against Judith M. and Joan M.  That case, No. 06 Civ. 4948, was assigned to Judge Kevin J. Castel.  On July 10, 2006, plaintiff Locals 40, 361, and 417 Pension Fund filed an interpleader complaint against Judith M. and Joan M., alleging identical facts and seeking identical relief as set forth in the complaint filed in the action before Judge Castel.  That case, No. 06 Civ. 5224, was assigned to this Court.  On November 27, 2006, on consent of the parties, the action before Judge Castel was re-assigned to this Court, and both actions were consolidated and ordered to proceed under No. 06 Civ. 5224 (JFK).

Judith M. served and filed an answer to the interpleader complaint.  The answer contained claims against the Funds and affirmative defenses in which Judith M. sought a judgment declaring that Judith M. was entitled to all of Decedent's accrued pension benefits, directing the Funds to pay the Benefits directly to Judith, and denying any claims that Joan M. may assert against the Funds relating to the Benefits. Defendant Joan M. did not file an answer.  Joan M. also has not filed a response to Judith M.'s motion for summary judgment, and the motion therefore is deemed to be unopposed.

## **Discussion**

### *I. Interpleader*

The Funds brought this action in interpleader pursuant to 28 U.S.C. § 1335.  A district court has jurisdiction over "any civil action of interpleader involving money or property worth $500 or more where two or more adverse claimants, of diverse citizenship as defined in 28 U.S.C. § 1332, are claiming or may claim to be entitled to such money or property, if the plaintiff has deposited the money or property with the court." New York Life Insurance Co. v. Connecticut Development Authority, 700 F.2d 91, 95 (2d Cir. 1983). "In such an action, the court is to hear and determine the case, and may discharge the plaintiff from further liability, may enter a permanent injunction restraining the claimants from proceeding in any state or United States court

6

in a suit to affect the property, and may make all appropriate orders to enforce its judgment." Id. (citing 28 U.S.C. § 2361). Although diversity is lacking in this case because both adverse claimants and the Funds reside in New York, "ERISA provides an independent basis for subject matter jurisdiction in an interpleader action arising under ERISA." Am. Int'l Life Assur. Co. v. Vazquez, No. 02 Civ. 0141, 2002 U.S. Dist. LEXIS 17312, at *5 (S.D.N.Y. Sept. 13, 2002) (citing Metro Life Ins. Co. v. Bigelow, 283 F.3d 436, 439-40 (2d Cir. 2002). The Funds allege that the Benefits at issue amount to more than $500 and seek to deposit the assets with a Court-appointed party. The requirements of 28 U.S.C. § 1335 therefore are satisfied.

Interpleader is designed to protect stakeholders, such as the Funds, from undue burden in the face of multiple claims against the same assets, and to relieve the stakeholder from determining the merits of the competing claims. See Fidelity Brokerage Servs., LLC v. Bank of China, 192 F. Supp. 2d 173, 177 (S.D.N.Y. 2002). An interpleader action normally is conducted in two stages:  During the first stage, the court determines whether the interpleader action is appropriate and the stakeholder is entitled to bring the action; during the second, the Court determines the rights of the competing claimants to the fund. Id. at 178 (citing Avant Petroleum Fund v. Banque Paribas, 853 F.2d 140, 143 (2d Cir. 1988)).  To determine whether an interpleader

7

action is appropriate, a court must assess whether the stakeholder "legitimately fears multiple liability directed against a single fund, regardless of the merits of the competing claims." Id. (internal quotations, citation, and alteration omitted). A claim in interpleader stems from "a real and reasonable fear of double liability or vexatious, conflicting claims." Washington Electric Coop., Inc. v. Paterson, Walke & Pratt, P.C., 985 F.2d 677, 679 (2d Cir. 1993) (internal quotations and citation omitted). A court is not required to assess the merits of the competing claims in determining whether interpleader is apporpriate because "the stakeholder should not be obliged at its peril to determine which of two claimants has the better claim." John Hancock Mutual Life Ins. Co. v. Kraft, 200 F.2d 952, 954 (2d Cir. 1953) (citation omitted); see also 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1704 (3d ed. 2001) ("It is immaterial whether the stakeholder believes that all claims against the fund are meritorious. Indeed, in the usual case, at least one of the claims will be quite tenuous.").

Here, the Funds confronted a "real and reasonable fear of double liability" arising from the potentially competing claims of Joan M. and Judith M. to the Benefits. At the time the action commenced, the Funds were aware that Judith M., as Decedent's surviving spouse, had expressly laid claim to the

Benefits by sending a letter to Local 580 Pension Fund, requesting that the Benefits be released to her. Although Joan M. withdrew the action that she commenced in New York State Court, the Funds correctly state that the dismissal of the case was without prejudice and "does not extinguish or preclude Joan R. McInerney' [sic] potential claims against the Funds for her share of the pension benefits." (Interpleader Compl. ¶ 10.) Thus, it was reasonable for the Funds to fear competing claims to the assets at issue. Accordingly, the Court finds that the action in interpleader is appropriate, and the Funds are discharged from this action following the release of Decedent's pension benefits to the registry of the Court, as directed below.

II. *Summary Judgment*

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail on a motion for summary judgment, the movant must show that no genuine factual dispute exists. Vermont Teddy Bear Co. v. 1-800 BEARGRAM Co., 373 F.3d 241, 244 (2d Cir. 2004) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)). In reviewing a summary judgment motion, the court must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor. See Giannullo v. City of N.Y., 322 F.3d 139, 140 (2d Cir. 2003). Even where the non-moving party fails to respond

9

to a motion for summary judgment, "the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." Vermont Teddy Bear Co., 373 F.3d at 244 (internal quotations and citation omitted).  In determining whether the moving party has met its burden, the court may not rely exclusively on the statement of undisputed facts contained in the moving party's Rule 56.1 statement, but "must be satisfied that the citation to evidence in the record supports the assertion" that there is no genuine issue as to any material fact. Id.  "[W]hen the material facts are undisputed, it is appropriate for a Court to resolve questions of law and enter judgment directing payment of the disputed fund to the appropriate party." Aon Corp. Accidental Death & Dismemberment Plan v. Hohlweck, 223 F. Supp. 2d 510, 514 (S.D.N.Y. 2002).

It is undisputed that the Funds are employee pension plans within the meaning of ERISA and that the distribution of the Benefits are governed by ERISA's provisions.  Section 514 of ERISA provides that the statute's provisions "'supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.'" Harrison v. Metro. Life Ins. Co., 417 F. Supp. 2d 424, 431 (S.D.N.Y. 2006) (quoting 29 U.S.C. § 1144(a)). Under ERISA, pension plan benefits are neither assignable nor

alienable. 29 U.S.C. §§ 1056(d)(3) and 1144(b)(7). Moreover, under ERISA, as amended by the Retirement Equity Act of 1984, 29 U.S.C. §§ 1052-1056, all pension plans are required to provide survivor benefits to a participant's surviving spouse. See 29 U.S.C. § 1055(a); see also Boggs v. Boggs, 520 U.S. 833, 843 (1997) ("The statutory object of the qualified joint and survivor annuity provisions, along with the rest of § 1055, is to ensure a stream of income to surviving spouses."); Board of Trustees of the Equity-League Pension Trust Fund v. Royce, 238 F.3d 177, 179 (2d Cir. 2001); Croskey v. Ford Motor Company-UAW, No. 01 Civ. 1094, 2002 U.S. Dist. LEXIS 8824, at *10 (S.D.N.Y. May 2, 2002)(stating that ERISA mandates that "pension benefits must be paid to [the decedent plan participant's] lawful widow, regardless of the plan's terms and definitions").

The sole means by which Joan M., as Decedent's ex-spouse, could assert a valid claim to the pension benefits as against Decedent's surviving spouse and designated beneficiary, is through the filing of a QDRO. As noted above, a QDRO assigns to an "alternate payee" the right to receive the benefits payable to a participant under an employee pension plan and thus constitutes a narrow statutory exception to ERISA's bar against alienation or assignment of pension plan benefits. See Metro Life Ins. Co., 283 F.3d at 441. Pursuant to a validly filed QDRO, for purposes of the distribution of survivor benefits under ERISA, a

11

former spouse may be treated as a surviving spouse, to the exclusion of the actually surviving spouse if the decedent has re-married.

It is undisputed that Judith M. is the surviving spouse of Decedent, that Decedent expressly designated Judith M. as the beneficiary of the Benefits that are being held by the Funds, and that Joan M. never filed a QDRO.  In the absence of a valid QDRO, under ERISA Joan M. has no claim of right to Decedent's pension benefits.  Moreover, under the Separation Agreement, which was incorporated into the Judgment, Joan M. expressly waived any claim she had to Decedent's pension benefits, apart from the equitable distribution of pension benefits that had vested during the term of the marriage and apart from her right to file a QDRO, which she failed to exercise.  Judith M., as Decedent's surviving spouse and designated beneficiary, therefore is entitled to receive the Benefits at issue.

In sum, the record before the Court[3] shows that there

---

[3] In addition to the Rule 56.1 Statement of Undisputed Facts, the record before the Court includes (1) the interpleader Complaints filed by the Funds; (2) Judith M.'s Answer, Claim, and Affirmative Defenses to Interpleader Complaint and Claim; (3) Judith M.'s Affidavit; (4) a copy of the Separation Agreement; (5) a copy of the Judgment; (6) a copy of Decedent's certificate of death; (7) a copy of the letter sent by Judith M. to an employee of Local 580 Pension Fund requesting that the Fund release Decedent's benefits to her; and (8) the transcript of the conference in New York State Supreme Court, memo-endorsed by Justice Garvey, in which Joan M., through counsel, moved for voluntary dismissal of the action pending in that court.

are no genuine issues of material fact regarding Judith M.'s
claim to Decedent's pension benefits.  The Court finds that
Judith M. is entitled to receive the Benefits that are being held
by the Funds.  Accordingly, Judith M's motion for summary
judgment is granted.

*III.  Attorneys' Costs and Fees*

The Funds seek an award of attorneys' costs and fees.
"Attorneys' fees and costs are generally awarded to an innocent
and otherwise disinterested stakeholder who has expended time and
money participating in a dispute not of his own making and the
outcome of which has as no impact on him." Fidelity Brokerage
Servs.,, 192 F. Supp. 2d 173, 183 (S.D.N.Y. 2002) (quoting
Companion Life Ins. Co. v. Schaffer, 442 F. Supp. 826, 830
(S.D.N.Y.1977)); see also Septembertide Publ'g, B.V. v. Stein &
Day, Inc., 884 F.2d 675, 683 (2d Cir. 1989) ("A disinterested
stakeholder who asserts interpleader is entitled to be awarded
costs and attorney's fees.").  Attorney's fees and costs "are
generally awarded against the interpleader fund." Septembertide
Publ'g, 884 F.2d at 683.   The Funds meet these criteria and thus
are entitled to reasonable attorneys' costs and fees from the
assets at issue.

**Conclusion**

---

13

The Funds are directed to deposit the Benefits with the Court registry in an interest-bearing account within twenty days of the entry of this Decision and Order. Upon deposit of the assets at issue with the Clerk of the Court, the Funds shall be released and discharged from any further liability to any party in this action arising out of any claims to the Benefits. The Funds are further directed to submit to the Court a detailed accounting of attorneys' fees and costs and a proposed judgment within twenty days of the entry of this Order.

Judith M.'s motion for summary judgment is GRANTED. A further Order of this Court will fix the amount of reasonable attorneys' fees and costs to be paid to the Funds from the assets at issue, and the remainder of the assets shall be released directly to Judith M.

SO ORDERED.

Dated:   New York, New York
         January  9 , 2007

                                    JOHN F. KEENAN
                                    United States District Judge

14